IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ISRAEL SHIMELES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-474 (RDA/IDD) |
| ) | |
| FAIRFAX COUNTY SCHOOL BOARD, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Fairfax County School Board's Motion to Dismiss the Amended Complaint ("Motion") (Dkt. 18). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Amended Complaint (Dkt. 16), Defendant's Memorandum in Support (Dkt. 19), Plaintiff's Opposition Brief (Dkt. 22), Defendant's Reply Brief (Dkt. 23), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons that follow.

I.  BACKGROUND

A. Factual Background[1]

Plaintiff Israel Shimeles is an "African American man." Dkt. 10 at 2.[2] At the time of the events at issue, Plaintiff was employed by Fairfax County Public Schools as a bus driver supervisor. *Id.* at 2-3. On June 29, 2023, Plaintiff visited the Lorton Office to pick up certain

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] Docket Entry page citations utilize the CM/ECF designated pagination.

1

items from his immediate supervisor, Annette Livingston ("Ms. Livingston"), a white woman.  *Id.* at 2.  As Ms. Livingston handed him the items, she commented that, if he were to lose the items, he "would be hung with a noose."  *Id.*  To avoid further interaction with Ms. Livingston, Plaintiff took a different job as a truck driver/warehouse worker.  *Id.*  Plaintiff then provided his two weeks' notice to Jeremy Doxer, the Area One Coordinator, and requested to be transferred immediately to a different area of the office in the interim of starting his new position.  *Id.*  Jeremy Doxer informed Plaintiff that he would have to take leave without pay instead.  *Id.*

Plaintiff further claims that he experienced harassment at his new worksite from two current supervisors, Karen Cogan and De Larrazabel.  *Id.*  Specifically, Ms. Cogan and Mr. Larrazabal accused Plaintiff of "stealing time."  *Id.*  They also questioned Plaintiff as to why the tracking system in his assigned work truck reflected that he was at a location he was not supposed to be at during the workday.  *Id.*  Plaintiff states that he provided proof of his correct location but was told that the matter would be investigated.  *Id.*  The following day, Plaintiff requested a meeting with Ms. Cogan and Mr. Larrazabal at which they told him no formal write-up would occur.  *Id.*

B.  Procedural Background

On March 25, 2024, Plaintiff, proceeding *pro se*, filed his Complaint against Fairfax County Public Schools and also filed a Motion for Leave to Proceed *In Forma Pauperis* ("IFP"). Dkts. 1, 2.  On April 4, 2024, U.S. Magistrate Judge Ivan D. Davis granted Plaintiff's Motion to Proceed IFP.  Dkt. 4.

On May 2, 2024, Defendant Fairfax County School Board filed its first Motion to Dismiss. Dkt. 7.  On November 13, 2024, this Court granted Defendant's motion, dismissing Plaintiff original complaint without prejudice and with leave to amend, so that Plaintiff could name the

2

proper defendant. Dkt. 15. On December 3, 2024, Plaintiff filed his Amended Complaint, naming Defendant Fairfax County School Board. Dkt. 16.

On December 18, Defendant filed its renewed Motion to Dismiss the Amended Complaint. Dkts. 18, 19. On January 15, 2025, Plaintiff filed his Opposition. Dkt. 22. On January 21, 2025, Defendant filed its Reply. Dkt. 23.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 189 (4th Cir. 2010), *aff'd sub nom.*, *Coleman v. Court of App. of Md.*, 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks and citation omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. *See id.*; *Twombly*, 550 U.S. at 556. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The factual allegations must be sufficient to "raise a right to relief above the speculative level" so

as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).[3]

### III.  ANALYSIS

Plaintiff's Amended Complaint asserts a hostile work environment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"). Dkt. 16 at 4. In this regard, Plaintiff's claim can be separated into two distinct incidents: (1) the one with Ms. Livingston; and (2) the one with Ms. Cogan and Mr. Larrazabal. In its Motion to Dismiss, Defendant seeks to dismiss the Plaintiff's hostile work environment claim on the basis that Plaintiff has failed to state a claim for relief. Dkt. 19 at 3. The Court will take each situation in turn and collectively.

Under Title VII, to state a hostile work environment claim, Plaintiff must allege sufficient facts to show that the alleged conduct he experienced was: (1) unwelcome; (2) based on a protected characteristic (here, race); (3) sufficiently severe or pervasive to alter the conditions of his

---

[3] Although "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing *pro se* complaint); *accord Atherton v. District of Columbia Off. of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting *Erickson*, 551 U.S. at 94; then quoting *Iqbal*, 556 U.S. at 679)).

employment and to create an abusive work environment; and (4) imputable to his employer. *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495-96 (4th Cir. 2015). A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). Courts must determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). There is no precise formula for determining whether a work environment is "abusive" or "hostile"; such a determination can be made "only by looking at all the circumstances." *Harris*, 510 U.S. at 23.

### A. Livingston Situation

Plaintiff's claim for a hostile work environment with Ms. Livingston boils down to the comment made to him when he picked up certain items from her on June 29, 2023. Dkt. 16 at 2. Specifically, Plaintiff alleges that Ms. Livingston threatened that he "would be hung with a noose" if he lost certain items. *Id.* Plaintiff does not allege any further conduct or statements made by Ms. Livingston that contributed to the hostile work environment. *See id.* at 1-7.

For this claim against Ms. Livingston, Defendant does not contest that the first or second prongs are satisfied. Dkt. 19 at 5. Namely, Plaintiff sufficiently alleges that Ms. Livingston's conduct towards him was unwelcome and that it was on account of his race. Rather, in seeking dismissal of Plaintiff's hostile work environment claim, Defendant asserts that the third element and fourth elements are unsatisfied because Plaintiff's allegations against Ms. Livingston fail to show that the alleged conduct was sufficiently severe or pervasive and that the comment made by Ms. Livingston cannot be imputed to her employer. *Id.* at 5-9.

1. Severe or Pervasive

Unwelcome conduct rises to the level of being severe or pervasive if, *inter alia*, that conduct created an environment that a reasonable person would find hostile. *See E.E.O.C. v. Sunbelt Rentals*, 521 F.3d 306, 315 (4th Cir. 2008). Although no one factor is dispositive, an objective analysis involves a consideration of all circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Here, Defendant contends that Plaintiff did not sufficiently plead that he experienced conduct so severe or pervasive that it rose to the level of a hostile work environment. Dkt. 19 at 5. This is because, in Defendant's view, "this single alleged comment is not sufficiently severe to be actionable on its own." *Id.* at 6. The Court is not persuaded.

Defendant is correct that the Fourth Circuit has determined that "[s]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Sunbelt Rentals*, 521 F.3d at 315. Likewise, the Fourth Circuit has also concluded that "complaints premised on nothing more than . . . callous behavior by one's supervisors or a routine difference of opinion and personality" do not necessarily establish the presence of a hostile work environment. *Id.* at 315-16.

But at the same time, an isolated incident of harassment *can* "amount to [a] discriminatory change[] in the terms and conditions of employment" if the incident is "extremely serious." *Id.* For instance, the Fourth Circuit has found that the use of racial slurs such as "porch monkey" and "n****r" constitute such isolated, serious comments. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015). Indeed, the Fourth Circuit has clarified that nothing "more than a

6

single incident of harassment" – if sufficiently serious – is required to establish a "viable hostile work environment" claim. *Id.* at 281. Equally relevant here, in determining the severity of harassing conduct, the Fourth Circuit has explained that the status of the harasser is significant. *Boyer-Liberto*, 786 F.3d at 278. "[A] supervisor's use of a [racial epithet] impacts the work environment far more severely than use by co-equals." *Id.* (quoting *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)). This is because "a supervisor's power and authority invests [her] harassing conduct with a particularly threatening character." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998). Ms. Livingston was Plaintiff's supervisor.

Here, Plaintiff plausibly alleges discrimination that is "sufficiently severe or pervasive [as] to alter [P]laintiff's conditions of employment and to create an abusive work environment." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001). Plaintiff's allegations do not involve mere disagreements between an employee and superior. Rather, the gravamen of Plaintiff's complaint is that his direct supervisor made a racially provocative threat of hanging by noose. It follows that Plaintiff plausibly alleges that Ms. Livingston's comment was sufficiently severe or pervasive to state a claim for relief. *See also McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 410 (4th Cir. 2022) (noting that "[t]he use of a noose to intimidate a Black person is a despicable and heinous act"); *Pryor*, 791 F.3d at 497 (finding that "a reasonable jury could property construe . . . racially-tinged death threats so severe that it does matter that they were not pervasive"). Accordingly, Defendant's Motion will be denied to the extent it rests on the argument that the conduct here was not sufficiently severe.

### 2. Conduct Imputed to the Employer

Defendant then argues that even if this Court finds that Ms. Livingston's comment is severe or pervasive, "any such harassment is not imputable to the School Board." Not so.

The law is abundantly clear that harassing conduct is automatically imputable to the employer if the offending individual is the plaintiff's supervisor. *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (holding that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee"); *Brown v. Perry*, 184 F.3d 388, 393 (4th Cir. 1999) (noting that "[w]here the harassment is being committed by one of the employer's supervisors . . . knowledge of the harassment is imputed to the employer" (citing *Spencer v. General Elec. Co.*, 894 F.2d 651, 648 n.10 (4th Cir. 1990))); *Vedula v. Azar*, 2020 WL 5500279, *15 (D. Md. Sept. 11, 2020) ("Where the conduct was led by [the plaintiff's] immediate supervisor . . . it can be fairly imputed to the employer."). Again, Ms. Livingston was Plaintiff's supervisor.

In seeking to avoid this conclusion, Defendant argues that "[t]o impute liability to an employer for an employee's harassment, a plaintiff must demonstrate that after having acquired actual or constructive knowledge of the harassing conduct, the employer had taken no prompt and adequate remedial action to correct it." *Coleman v. Kettler Mgmt.*, 2022 WL 17585780, *8 (E.D. Va. Dec. 12, 2022) (internal quotation marks omitted). Defendant is mistaken here because the standard it cites, requires the employer to have actual or constructive knowledge of the conduct and failing to take remedial action applies when the alleged harasser is a *colleague* – not an (as here) an immediate supervisor. Rather, as stated *supra*, harassing conduct is automatically imputable to the employer if the offending individual is the plaintiff's supervisor.

Here, Plaintiff's Complaint clearly asserts that Ms. Livingston was Plaintiff's immediate supervisor. *See* Dkt. 16 at 2 ("my [i]mmediate supervisor Annette Livingston"); *see also* Dkt. 19 at 1-11 (Defendant failing to argue that Ms. Livingston was *not* Plaintiff's immediate supervisor).

8

Accordingly, Plaintiff has sufficiently alleged that Ms. Livingston's conduct can be imputed to her employer, Defendant.

\* \* \*

In sum, based on the allegations made against Ms. Livingston, Plaintiff has sufficiently pled a hostile work environment claim at this stage.

### B. Cogan and Larrazabal Situation

After the incident with Ms. Livingston, Plaintiff accepted a different position as a truck driver/warehouse worker for the Fairfax County Public Schools. In his new role, supervised by Ms. Cogan and Mr. Larrazabal, Plaintiff again asserts a hostile work environment claim – this time based on an incident where Ms. Cogan and Mr. Larrazabal accused Plaintiff of stealing time and asked him about a location discrepancy in his truck tracking. Plaintiff fails to state a hostile work environment claim on these grounds.

Notably absent from Plaintiff's allegations regarding his new supervisors is any assertion that their treatment of him was "based on race or color." Accordingly, these allegations fall well short of raising Plaintiff's right to relief above the speculative level. *See Hector v. Wolf*, 2020 WL 7265848, at *7 (E.D. Va. Dec. 10, 2020) (where plaintiff made no plausible allegations that certain incidents were based on plaintiff's race or color, those incidents fail the second prong to state a plausible claim for a hostile work environment, being "based on a protected characteristic" (citing *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009))).

Because Plaintiff has alleged no facts from which the Court could conclude that his interactions with Ms. Cogan and Mr. Larrazabal were based on race, the Court also cannot reasonably infer that these circumstances were part of the original alleged harassment by Ms. Livingston. That is, there are no facts alleged that connect Ms. Cogan and Mr. Larrazabal to Ms.

Livingston (other than their common employment), as they appear to have different responsibilities and be part of a different department than Ms. Livingston. Accordingly, the incidents with Ms. Cogan and Mr. Larrazabal cannot independently support a claim of harassment and do not appear to be part and parcel of the original incident with Ms. Livingston.

Accordingly, Plaintiff has not stated a hostile work environment claim as to the actions of Ms. Cogan and Mr. Larrazabal.[4]

## IV. CONCLUSION

In sum, Plaintiff has plausibly alleged a hostile work environment claim with respect to his interaction with Ms. Livingston. Plaintiff, however, has failed to state a claim for hostile work environment in his new role under Ms. Cogan and Mr. Larrazabal.

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 18) is GRANTED-IN-PART, as to Plaintiff's allegations against Ms. Cogan and Mr. Larrazabal, and DENIED-IN-PART, as to Plaintiff's allegations against Ms. Livingston; and it is

FURTHER ORDERED that a Scheduling Order will issue promptly.

It is SO ORDERED.

Alexandria, Virginia
August 14, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[4] At this time, there is no suggestion that Plaintiff is in possession of additional facts to allege with respect to Ms. Cogan and Mr. Larrazabal. Indeed, the Court notes that this is the second time that the Court has addressed Plaintiff's claims and that Plaintiff was previously permitted leave to amend his complaint. Thus, on this record, there appears to be no basis to permit further amendment, and the more fruitful course of action is to have the parties proceed to discovery.